**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

MICHAEL A. MASTRANGELO, Individually and On Behalf of All Others Similarly Situated,

Plaintiff,

v.

KALIL & LaCOUNT,

Defendant.

Case No. 1:22-cv-00107-AJ

# MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT, CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF CLASS NOTICE

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........................................................................................3

**I. INTRODUCTION** ........................................................................................10

**II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY** ……………..……...10

**III. THE PROPOSED CLASSWIDE SETTLEMENT** ……………………...…..……11

**IV. STANDARD FOR CLASS CERTIFICATION** ..........................................................16

**V. THE REQUIREMENTS OF FED. R. CIV. P. 23(a) ARE MET** ..............................19

- **A. Numerosity** ........................................................................................19
- **B. Commonality** ........................................................................................20
- **C. Typicality** ........................................................................................21
- **D. Fair and Adequate Class Representation** ..........................................................22

**VI. THE REQUIREMENTS OF FED. R. CIV. P. 23(b)(1) ARE MET** .........................24

**VII. THE REQUIREMENTS OF FED. R. CIV. P. 23(b)(3) ARE MET** ….....................26

- **A. Common Questions Predominate** ..........................................................27
- **B. A Class Action is Superior to Other Methods of Adjudication** .....................28

**VIII. THE SETTLEMENT SHOULD BE GIVEN PRELIMINARY APPROVAL AS IT IS FAIR, REASONABLE, ADEQUATE AND THE PRODUCT OF DILIGENT INVESTIGATION, LITIGATION AND NEGOTIATION** .....................................31

**IX. PLAINTIFF REQUESTS AN ORDER APPROVING THE PROPOSED CLASS SETTLEMENT** ........................................................................................32

**X. THE PROPOSED NOTICE PROGRAM PROVIDES ADEQUATE NOTICE AND SHOULD BE APPROVED** ……………………………...……..33

**XI. THE COURT SHOULD APPOINT FIRST CLASS, INC. AS SETTLEMENT ADMINISTRATOR** ……………………………………………………..…34

**XII. CONCLUSION** ....................... ........................................................................ 34

**TABLE OF AUTHORITIES**

*Abels v. JBC Legal Group, P.C.*

227 F.R.D. 541 (N.D. Cal. 2005)....................................................................29, 30

*Alderman v. GC Servs. Ltd. P'ship*

Case No. 2:16-cv-14508, Dkt. Nos. 181, 190 (S.D. Fla. 2018)………………………....30

*Amchem Products, Inc. v. Windsor*

521 U.S. 591 (1997)……………….......................................................................24, 26

*Ballard v. Equifax Check Services, Inc.*

186 F.R.D. 589 (E.D. Cal. 1999) .........................................................................27

*Bellum v. Law Offices of Frederic I. Weinberg & Assocs.*, P.C.

2016 WL 4766079 (E.D. Pa. Sept. 13, 2016)……………………….……..………..30

*Berther v. TSYS Total Debt Mgmt., Inc.*

2007 WL 1795472 (E.D. Wis. June 19, 2007) ..............................................................31

*Bicking v. Law Offices of Rubenstein & Cogan*

2011 WL 5325674 (E.D.Va.2011)…………………………………………………20, 27

*Bogner v. Masari Investments, LLC*

2010 U.S. Dist. LEXIS 81143 (D. Ariz. 2010) ……………….………………….……30

*Borcherding-Ditloff v. Transworld Sys. Inc.*

185 F.R.D. 558 (W.D. Wis. 1999) …......................................................................20

*Bourlas v. Davis Law Assocs.*

237 F.R.D. 345, 355 (E.D.N.Y. 2006)……………………..…………………..……30

*Boyd v. Bechtel Corp.*

485 F.Supp 610 (N.D. Cal. 1979) ........................................................................... 31

*Camacho v. Bridgeport Financial*

523 F.3d 973, 978 (9th Cir.2008)……………………………………………………..14,15

*Carroll v. United Compucred Collections, Inc.*,

399 F.3d 620, 625 (6th Cir. 2005)…………………………………………………19, 29

*Catala v. Resurgent Capital Servs*. L.P.

2010 WL 2524158 (S.D. Cal. Jun. 22, 2010)……………………..…………...….30

*Cope v. Duggans*

203 F. Supp. 2d 650, 653 (E.D. La. 2002)…………………………….……..……30

*Datta v. Asset Recovery Sols., LLC*,

2016 WL 1070666 (N.D. Cal. Mar. 18, 2016)……………………………………19

*Date v. Sony Elecs., Inc*.,

2013 WL 3945981 (E.D. Mich. July 31, 2013)……………………..……………….33

*Del Campo v. Am. Corrective Counseling Servs.*

254 F.R.D. 585 (N.D. Cal. 2008)…………………………………………………….30

*East Texas Motor Freight System Inc. v. Rodriguez*

431 U.S. 395 (1977) ..........................................................................................................19

*Ellis v. Naval Air Rework Facility*

87 F.R.D 15 (N.D. Cal. 1980) ...................................................................................31

*Fed. Home Loan Mortgage Corp. v. Lamar*

503 F.3d 504, 513 (6th Cir. 2007)…………………………………..……….......18

*Fisher Bros. v. Cambridge Lee Industries, Inc.*

630 F.Supp. 482 (E.D. Pa. 1985) …….......................................................................31

*Garcia v. Solomon*

2013 WL 12069058 (SDCA 2013)………………………………….………………14

*Gonzalez v. Dynamic Recovery Solutions, LLC*

2015 WL 738329 (S.D. Fla. Feb. 23, 2015)……………………..............................….30

*Gaalswijk-Knetzke v Receivables Mgmt. Servs. Corp.*

2008 WL 3850657 (M.D. Fla. Aug. 14, 2008) ..........................................................30

*Henderson v. Eaton*

2002 WL 3145728 (E.D. La. 2002)…………………………..…………...……….30

*Hunt v. Imperial Mercht. Servs.*

2010 WL 3958726 (N.D.Cal. Oct. 7, 2010)……………………………..…………14

*In re Drexel Burnham Lambert Group, Inc.*

960 F.2d 285 (2d Cir. 1992) ...........................................…...............................24,25

*In re Gen. Motors*

55 F.3d 768 (3d Cir.1995) ...…..........................................................................32

*In re Joint Eastern and Southern District Asbestos Litigation*

982 F.2d 721 (2d Cir. 1992), modified, 993 F.2d 7 (2d Cir. 1993)................................25

*In re Skechers Toning Shoe Prod. Liab. Litig.*

2013 WL 2010702 (W.D. Ky. May 13, 2013)……………...………….…………….32

*Jacobson v. Persolve, LLC*

2016 U.S. Dist. LEXIS 108838 (N.D. Cal. March 23, 2016)………………………….30

*Jerman v. Carlisle*

271 F.R.D. 572, 576–77 (N.D. Ohio 2010)……………………………………..……30

*Kalish v. Karp & Kalamotousakis, LLP*,

246 F.R.D. 461 (S.D.N.Y. 2007)…………………………………………….………30

*Kalkstein v. Collecto, Inc.*

304 F.R.D. 114, 117 (E.D.N.Y. 2015)……………………………………………19

*Keele v. Wexler*

149 F. 3d 589 (7th Cir. 1998) ........................................................................18, 27

*Labbate-D'Alauro v. GC Servs. Ltd. Pshp.*

168 F.R.D. 451 (E.D.N.Y. 1996) ……………………………........................…20, 30

*Lewis v. ARS Nat'l Servs., Inc*.

2011 WL 3903092 (N.D. Ala. Sept. 6, 2011) ……………………………..………..27

*Lewis v. Riddle*,

C.A. No. 97-0542, 1998 U.S. Dist. LEXIS 20465, at *6 (W.D. La. Nov. 18, 1998)…..19

*Lightbourn v. Cty of El Paso*,

118 F.3d 421, 426 (5th Cir. 1997)………………………………………………...22

*Littledove v. JBC & Associates, Inc.*

2001 WL 42199 (E.D. Cal., January 11, 2001) ........................................................19

*Little–King v. Hayt Hayt & Landau*

2013 WL 4874349 (D.N.J. Sept. 10, 2013)…………………..………..……………30

*Lombardi v. Columbia Recovery Group, LLC*

2013 U.S. Dist. LEXIS 146375 (W.D. Wash. Oct. 9, 2013)………..………………....30

*Luther v. Convergent Outsourcing, Inc.*

2016 WL 1698396 (E.D. Mich. Apr. 28, 2016)………..…………..…………………19, 29

*Mace v. Van Ru Credit Corp.*

109 F.3d 338 (7th Cir. 1997)…………………………….……………….….………30

*Magallon v. Robert Half International, Inc.*

311 F.R.D. 625, 641 (D. Or. 2015) ………………………………...…………………29

*Mann v. Acclaim Fin. Serv., Inc.*

232 F.R.D. 278, 284 (S.D. Ohio 2003)……………………………………..……20, 22

*McDonald v. Asset Acceptance, LLC*

296 F.R.D. 513, 522 (E.D. Mich. 2013)……………………………………..……29

*Midland Funding LLC v. Brent*

644 F. Supp. 2d 961, 977 (N.D. Ohio 2009)………...…………………………………16

*Mullen v. Treasure Chest Casino, LLC*,

186 F.3d 620, 624 (5th Cir. 1999)………………………………………………...20

*National Rural Telecommunications Corp*. v. DIRECTV, Inc.

221 F.R.D. 523 (C.D. Cal. 2004) ..........................................................................32

*Newman v. CheckRite California, Inc.*

1996 WL 1118092 (E.D. Cal., August 2, 1996) ........................................................27

*Ortiz v Fireboard Corp.*

527 US 815 (1999) ....................................................................................................25

*Palmer v. Far West Collection Services, Inc.*

2008 WL 5397140 (NDCA 2008)…………………………………………………..…….15

*Passa v. City of Columbus*

266 F.R.D. 197, 206 (S.D. Ohio 2010)………………………………..…17, 19, 20, 21

*Reade–Alvarez v. Eltman, Eltman & Cooper, P.C.*

2006 WL 3681138, (E.D.N.Y. Dec.11, 2006)…………….……………….……………..30

*Roundtree v. Bush Ross, P.A.*,

304 F.R.D. 644, 652, n.7 (M.D. Fla. 2015)…………...........................................……19

*Salazar v. Midwest Servicing Group, Inc.*

2018 WL 4802139 (C.D. Cal. Oct. 2, 2018) ……………………………..………..15, 30

*Schell v. Frederick J. Hanna & Assocs*., P.C.,

2016 WL 1273297 (S.D. Ohio 2016)…………………………...……………………30

*Schuchardt v. Law Office of Rory W. Clark*

2016 WL 1701349 (N.D. Cal. Apr. 28, 2016)……………………………….......14, 30

*Seeger v. Plaza Associates*

2007 U.S. Dist. LEXIS 22824 (E.D. Wis. March 29, 2007)…………………....……..30

*Slade v. Progressive Sec. Ins. Co.*,

856 F.3d 408, 412 (5th Cir. 2017)……………………………………………………...23

*Staton v. Boeing Co.*

327 F.3d 938, 965 (9th Cir. 2003)………………………………..................………14

*Taylor*,

103 F.3d at 1236 (5th Cir. 1997)…………………………………………………………18

*Thacker v. Cheaspeake Appalachia LLC*,

695 F. Supp. 2d at 532 (E.D.Ky. 2010)……………………………………….……..32

*Turnette v. Fulton, Friedman & Gullace, LLP*,

11-cv-2617 JAH (BLM) (S.D. Cal. December 22, 2016)……...…………………..……..30

*UAW v. General Motors Corp*,

497 F.3d at 632 (6th Cir. 2007)…………………………..…………………………..33

*United States v. Nat'l Fin. Servs., Inc.*,

98 F.3d 131, 141 (4th Cir. 1996)……………………………………………….………18

*Weiss v. Regal Collections*,

385 F. 3d 337, 345 (3d Cir. 2004)…………………………………….…….…………18

*Wess v. Storey*,

2011 WL 1463609, at *7 (S.D. Ohio Apr. 14, 2011)………………………………20, 22

*Whitford v. Weber & Olcese, P.L.C.*,

2016 WL 122393, at *2 (W.D. Mich. Jan. 11, 2016)……………………………………..30

*Wyatt v. Creditcare, Inc.*,

2005 WL 2780684 (N.D. Cal., October 25, 2005) ......................................................28

*Young v. Nationwide Mut. Ins. Co.*,

693 F.3d 532, 543 (6th Cir. 2012)……………………………………………….…28, 29

*Zeidman v. J. Ray McDermott & Co.*,

651 F.2d 1030, 1038 (5th Cir. 1981)………………………………………………...19

**Statutes**

15 U.S.C § 1692k ..........................................................................................28, 29, 31

15 U.S.C § 1692k(a)(2)(B) ..............................................................................13, 18, 31

Rules Fed. R. Civ. P 23(a).........................................................................16, 19, 21, 23, 24

Fed. R. Civ. P. 23(a)(1) ...........................................................................................19, 20

Fed. R. Civ. P. 23(a)(2)...........................................................................................20, 21

Fed. R. Civ. P. 23(b)(1)(B) ..................................................................................24, 25, 26

Fed. R. Civ. P. 23(b)(3) ........................................................................16, 19, 24, 26, 28, 33

Fed. R. Civ. P. 23(g)(1)(A) ...........................................................................................23

Fed. R. Civ. P. 23(g)(1)(B)............................................................................................23

**Treatises**

1 J. Pomeroy, Equity Jurisprudence

§ 407 (4th ed. 1918) ....................................................................................................26

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff, Michael A. Mastrangelo ("Plaintiff"), by and through his counsel, Martin & Bontrager, APC and Bryan W. Clickner, Esq., hereby submits the instant Memorandum of Points and Authorities in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement of this action (the "Action").

## I. INTRODUCTION

This consumer class action arises from Plaintiff Michael A. Mastrangelo's ("Plaintiff") allegations that Defendant Kalil & LaCount ("K&L" or "Defendant") sent Plaintiff and other similarly situated consumers initial collection letters in attempt to collect upon an alleged debt which were in violation of 15 U.S.C. §1692 et seq., the Fair Debt Collection Procedures Act ("FDCPA"). Plaintiff submits this motion for preliminary approval of the proposed class action settlement (the "Settlement") of this lawsuit (the "Action"). While Defendant K&L denies Plaintiff's allegations that the subject letters violated the FDCPA, K&L has entered this settlement and therefore K&L does not oppose this motion. The terms of the Settlement are set forth in the Class Action Settlement Agreement (hereinafter the "Agreement" or "Agr.") attached as Exhibit 1 to the Declaration of Nicholas J. Bontrager ("Bontrager Decl."), filed concurrently herewith.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff alleges that Defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") by sending written correspondence to Plaintiff and the Settlement Class Members demanding payment to occur within thirty (30) days of the date of the letter as well as imposing the same deadline for the recipient to dispute or request validation of the alleged debt, which allegedly overshadowed and contradicted Plaintiff's and the Settlement Class Members' right to dispute the validity of the alleged debt within 30 days from receipt of the letter, pursuant to the FDCPA, in violation of 15 U.S.C. §§ 1692e, 1692e(10) and 1692g. Defendant has denied and continues to deny that it violated the FDCPA and denies all allegations of wrongdoing or liability against it in the Action.

In order to reach the Settlement, the terms of which are memorialized herein, and subject to court approval, the Parties conducted substantial formal discovery, including written discovery requests, concerning the class size and Defendant's financial status. Bontrager Decl, ¶ 11.

## III. THE PROPOSED CLASSWIDE SETTLEMENT

### A. Settlement Class Members

Pursuant to Section 2.05, "Class" or "Class Members" or "Class Definition" means: (1) all individual consumers in the United States; (2) who allegedly owed a consumer debt; (3) who Defendant sent a written correspondence similar or identical to the January 31, 2022 letter Mr. Mastrangelo received seeking to collect on an alleged consumer debt, (4) which was not returned as undeliverable; (5) within the one year prior to when Plaintiff filed the instant action.

There are approximately 75 individuals in the Settlement Class. This was determined by propounding discovery to Defendant, who responded by identifying all 75 individuals who received the written correspondence identical or substantially similar to the form received letter received by Plaintiff. Bontrager Decl. ¶ 15.

### B. Notice to the Settlement Class Members

The Settlement Agreement provides that Epperly Resolutions, the third-party claims administrator, shall provide the following:

#### 1. Website Notice

Pursuant to Section 9.01 of the Settlement Agreement, no later than fourteen (14) days after entry of the Preliminary Approval Order, the Claims Administrator shall: (a) Create a settlement website which shall be hosted for three (3) months and shall be operative no later than the first date that the Class publication notice is published; (b) The Settlement Website shall contain downloadable copies of the Preliminary Approval Order, Long Form Notice, Settlement Agreement, claim form, and when filed, Class Counsel's motions for an attorneys' fees and expenses award and for an incentive fee for the Class Representative; c) Post on the Settlement Website a Long Form Notice substantially in the form attached hereto as Exhibit C which shall set forth in a question and answer format the details of the settlement and the rights of Class

Members to participate in the settlement, exclude themselves, or object to the settlement; and d) Post on the Settlement Website any subsequent notices agreed to by the Parties, and rulings issued by the Court.

**2. Direct Notice**

Pursuant to Section 9.02 of the Settlement Agreement, no later than fourteen (14) days after entry of the Preliminary Approval Order, Defendant shall deliver to the Claims Administrator names and addresses for certain individuals who are potential Class Members. If needed, the Claims Administrator shall use a reverse look up data base to obtain addresses that are believed to belong to those potential Class Members. No later than thirty (30) days after entry of the Preliminary Approval Order, the Claims Administrator shall provide notice by first class mail/postcard to the addresses obtained through the process set forth above. The notice shall be substantially in the form set forth as Exhibit D, provided, however, that the Parties shall have the discretion to make agreed-upon non-material minor revisions to the notice before mailing it.

**3. Toll Free Telephone Number.**

Pursuant to Section 9.03 of the Settlement Agreement, no later than fourteen (14) days after entry of the Preliminary Approval Order, the Claims Administrator shall set up a toll-free telephone number for receiving toll-free calls related to the settlement. That telephone number shall be maintained for three (3) months.

**4. CAFA Notice**

Pursuant to Section 9.04, Class Counsel shall be responsible for serving any Class Action Fairness Act ("CAFA") notice that may be required by 28 U.S.C. § 1715 within ten (10) days of the filing of the Preliminary Approval Motion.

**C. Settlement Terms and Benefits to the Settlement Class**

The proposed Settlement contemplates the following terms and benefits to be provided to the Settlement Class:

//

///

**1. Class Payment**

The proposed Settlement provides that Defendant will pay one thousand eight hundred and seventy five dollars ($1,875.00) (the "Class Payment") to settle the Action and in return for the Released Claims in favor of Defendant and the Released Parties. All estimated 75 individual Settlement Class members who timely submit a claim form will receive a pro rata payment from the Settlement Fund. If none of the 75 consumers identified in Section 2.06 above opt-out of the settlement, each Qualified Class Member will receive twenty five dollars ($25.00). If consumers opt-out of the settlement, then the amounts paid to each Qualified Class Member shall be increased on a *pro rata* basis.

If any funds remain in the Settlement Fund from uncashed or undeliverable checks 90 days after all claims have been paid, these residual funds will be redistributed pro rata to Qualified Class Members who cashed their first settlement checks. Provided, however, that if the redistribution does not result in each Qualified Class Member receiving an additional $5.00 or more, the residual funds will be disbursed to the New Hampshire Legal Aid ("NHLA") as a *cy pres* recipient. If any funds remain in the Settlement Fund from uncashed or undeliverable redistribution checks 60 days after all claims have been paid, the residual funds will be disbursed to NHLA.

The $1,875.00 Class Payment represents over 100% of the maximum class-wide statutory damages allowed by the FDCPA, which are capped by statute at one percent of Defendant's net worth. See 15 U.S.C. § 1692k(A)(2)(B) ("in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector"). See Declaration of Nicholas J. Bontrager, ¶ 17.

**2. Class Representative's Application for An Award**

Class Counsel will move the Court for an award to Plaintiff in the amount of $1,000.00, for his service as Class Representative, which is 100% of Plaintiff's maximum statutory damages

allowable under the FDCPA.

**3. Class Counsel's Application for Attorneys' Fees and Costs**

The issue of Plaintiff's litigation costs and attorney's fees is deferred. Class Counsel will move the Court for an award of attorneys' fees and expenses to be paid by the Defendant. Class Counsel agrees that their request for attorneys' fees and costs, as defined in 28 U.S.C. § 1920, will not exceed thirty nine thousand five hundred dollars ($39,500.00). Defendant will not object, and will stipulate to Plaintiff's entitlement to, any request by Class Counsel for attorneys' fees and costs that is consistent with this Section. The amount of any attorneys' fees and expenses approved by the Court shall be paid by Defendant outside of the Settlement Fund and thus in addition thereto. The fact that Plaintiff's counsel will petition for and may ultimately recover fees and costs in excess of what the Settlement Class Members may receive in sum, is not per se unreasonable nor should it prohibit the Court granting preliminary approval of the proposed settlement as fair and reasonable. The mandate to calculate attorneys' fees in FDCPA class actions via the Lodestar method (as opposed to a percentage of the common fund method) has been confirmed by numerous courts. [1]

---

[1] In the matter of *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673 (2016), the Northern District of California awarded class counsel attorneys' fees and costs in the sum of $52,500.00 for an FDCPA class action settlement wherein the amount paid to the class members totaled $13,610.00 in sum. In so holding, the *Schuchardt* Court ruled that "[p]laintiffs do not request a percentage of recovery from the common fund, but instead seek attorneys' fees and expenses separate from the Class Members' recovery. Therefore, the lodestar method is the appropriate means of determining whether Class Counsel's fee request is reasonable. *See Camacho*, 523 F.3d at 978 (internal citations omitted); *see, e.g.*, *Hunt v. Imperial Mercht. Servs.*, No. C–05–04993 DMR, 2010 WL 3958726, at *3 (N.D.Cal. Oct. 7, 2010) (using the lodestar method to determine reasonable attorneys' fees to successful plaintiffs in a FDCPA class action settlement). Id. at 688 (emphasis added).

Similarly, in the matter of *Garcia v. Solomon*, 2013 WL 12069058 (SDCA 2013), the Southern District of California awarded class counsel attorneys' fees and costs in the sum of $71,500.00 for an FDCPA class action settlement wherein the amount paid to the class members totaled $8,000.00 in sum. In so holding, the *Garcia* Court found that "[i]n addition, the FDCPA provides for attorneys' fees and costs to the party successfully enforcing the law. 15 U.S.C. § 1692k(a)(3). Under a statute such as this, the Court calculates attorney's fee awards using the lodestar method. *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)." Id. at 2 (emphasis added).

In *Palmer v. Far West Collection Services, Inc.*, 2008 WL 5397140 (NDCA 2008), the Northern District of California awarded class counsel attorneys' fees and costs in the sum of $71,000 for an FDCPA class action settlement wherein the amount paid to the class members totaled $14,518.38 in sum. In so holding, the *Palmer* Court confirmed that, "[i]n a successful action under the FDCPA, the award of attorneys fees to the plaintiff is mandatory. 15 U.S.C. § 1692k(a)(3); *Camacho v. Bridgeport Financial,* 523 F.3d 973, 978 (9th Cir.2008). In making such an award, the court should use the lodestar method, multiplying a reasonable expenditure of time by a reasonable rate to reach what is, presumptively, a reasonable award. *Id.*" Id. at 1 (emphasis added).

**4. Class Claims Administration**

Defendant shall pay Epperly, the third-party Claims Administrator for all costs required to provide notice, establish the settlement website, and establish a toll-free telephone number, as well as any other costs of administration.

**5. Exclusions/Opting Out of the Settlement**

Pursuant to Section 10.01 of the Settlement Agreement, any Class Members who wish to exclude themselves from the Settlement Class ("opt out") must advise the Claims Administrator in writing of that intent, and their opt out request must be postmarked no later than the Opt Out Deadline. The Claims Administrator shall provide the Parties with copies of all opt out requests it receives and shall provide a list of all Class Members who timely and validly opted out of the settlement in their declaration filed with the Court, as required by Section 10.01 of the Settlement Agreement.

Any Class Member who does not timely comply with all requirements for opting out contained in this Agreement shall be a Settlement Class Member, bound by this Agreement, this Settlement, and the Release set forth in Section XIV of the Settlement Agreement.

**6. Objections**

Pursuant to Section 10.02 of the Settlement Agreement, any settlement Class Member who intends to object to this settlement must file a written objection with the Court no later than the Objection Deadline and simultaneously provide a copy to Class Counsel and counsel for Defendant at the addresses set forth in the Notice. In the written objection, the Settlement Class Member must state his or her full name, current address, telephone number, the reasons for his or her objection, and whether he or she intends to appear at the Fairness Hearing on his or her own behalf or through counsel. Any documents supporting the objection must also be attached to the

---

In *Salazar v. Midwest Servicing Group, Inc.*, Case No. 2:17-cv-00137-PSG-KS, the Hon. Judge Gutierrez of the Central District awarded Class Counsel Martin & Bontrager, APC fees and costs in the sum of $49,500.00 for an FDCPA class action settlement wherein the amount paid to the class members totaled $2,200.00 in sum.

Objection, and if the Settlement Class Member intends to call witnesses at the Fairness Hearing, those witnesses must be identified, including providing each witness's name, address and telephone number in the Objection. Objections must be signed by the Settlement Class Member making them or by his or her counsel. Any Settlement Class Member who has timely filed a written objection, as provided for above, may appear at the Fairness Hearing, either in person or through an attorney hired at the Class Member's own expense, to object to the fairness, reasonableness, or adequacy of this Agreement or the Settlement. Any Class Member who fails to comply with the provisions of Section 10.02 shall waive and forfeit any and all rights to appear separately and/or to object and shall be bound by all the terms of this Settlement, and by all proceedings, orders, and judgments in the litigation.

### 7. **Defendant Has Agreed to Cease Using the Form of Debt Collection Letter At Issue**

In addition, Defendant has agreed to cease using the form of debt collection letter at issue. Importantly, Plaintiff would not likely have obtained this relief had this case gone to trial. See *Midland Funding LLC v. Brent*, 644 F. Supp. 2d 961, 977 (N.D. Ohio 2009) ("This Court agrees that declaratory and injunctive relief are not appropriate under the FDCPA.")

## IV. **STANDARD FOR CLASS CERTIFICATION**

To attain certification of the proposed class, Plaintiff must satisfy each of the four requirements of Rule 23(a), commonly referred to as numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). Because Plaintiff seeks certification under Rule 23(b)(3), hhe must also demonstrate that common issues predominate and that class treatment is the superior method to resolve this dispute. See *Passa v. City of Columbus*, 266 F.R.D. 197, 206 (S.D. Ohio 2010) (certifying FDCPA class).

I. **<u>The FDCPA is well-suited for class action treatment</u>**

The FDCPA is a comprehensive statute that prohibits a catalog of activities in connection with the collection of debts by third parties. 15 U.S.C. § 1692 et seq. The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights. 15 U.S.C. § 1692(k). The provisions of the FDCPA declare certain rights available to debtors, forbid deceitful and misleading practices, and prohibit harassing and abusive tactics. In enacting the FDCPA, Congress found that "[t]here is abundant evidence of the use of abusive, deceptive and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). The express purposes of the FDCPA are to "eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Designed to protect consumers from unscrupulous collectors, whether or not there exists a valid debt, the FDCPA broadly enumerates several practices considered contrary to its stated purpose, and forbids debt collectors from taking such action. *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995) ("The Fair Debt Collection Practices Act prohibits debt collectors from making false or misleading representations and from engaging in various abusive and unfair practices.")

Class treatment of claims under the FDCPA is essential to its statutory structure. "Representative actions, therefore, appear to be fundamental to the statutory structure of the FDCPA. Lacking this procedural mechanism, meritorious FDCPA claims might go unredressed because the awards in an individual case might be too small to prosecute an individual action." *Weiss v. Regal Collections*, 385 F. 3d 337, 345 (3d Cir. 2004). As the Fourth Circuit Court of Appeals recognized, "[w]ithout a real sting, the defendants would be unlikely to be deterred from

violating the Act, in light of the substantial profit to be made using aggressive and improper collection practices." *United States v. Nat'l Fin. Servs., Inc*., 98 F.3d 131, 141 (4th Cir. 1996). Congress, in fact, designated special remedies to unnamed members of a class action filed under the FDCPA. See 15 U.S.C §§ 1692k(a)(2)(B) and (b)(2); *Keele v. Wexler*, 149 F. 3d 589 (7th Cir. 1998).

Moreover, class treatment of FDCPA claims is particularly appropriate because the FDCPA is a strict liability statute liberally construed in favor of the consumer. *Fed. Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 504, 513 (6th Cir. 2007). ("Courts have characterized the FDCPA as a strict liability statute, meaning that a consumer may recover statutory damages if the debt collector violates the FDCPA even if the consumer suffered no actual damages."). As the Ninth Circuit stated:

> … because the FDCPA is a remedial statute aimed at curbing what Congress considered to be an industry-wide pattern of and propensity towards abusing debtors, it is logical for debt collectors—repeat players likely to be acquainted with the legal standards governing their industry—to bear the brunt of the risk. *Clark v. Capital Credit & Collection Services, Inc*., 460 F.3d 1162, 1171 (9th Cir. 2006)

Consequently, common questions arise in the context of FDCPA cases where, like here, "defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (citations omitted); *accord. Lewis v. Riddle*, C.A. No. 97-0542, 1998 U.S. Dist. LEXIS 20465, at *6 (W.D. La. Nov. 18, 1998). Against this backdrop, courts routinely certify FDCPA class actions based upon violative debt collection communications. See, e.g., *Luther v. Convergent Outsourcing, Inc.*, Case No. 15-10902, 2016 WL 1698396, at *6 (E.D. Mich. Apr. 28, 2016) (certifying class action); *Datta v. Asset Recovery Sols., LLC*, No. 15-CV-00188, 2016 Case 3:15-cv-00819-DJH-CHL 2016 WL 1070666, at *11 (N.D. Cal. Mar. 18, 2016) (granting class certification); *Roundtree v. Bush Ross, P.A.*, 304 F.R.D. 644, 652, n.7 (M.D. Fla. 2015) ("[T]he overwhelming majority of courts that have considered challenges to certifying FDCPA

classes when the communications are allegedly identical have found Rule 23(b)(3) requirements met and certified classes."); *Kalkstein v. Collecto, Inc.*, 304 F.R.D. 114, 117 (E.D.N.Y. 2015) ("As is set forth below, this case, together with other FDCPA cases, militate toward granting the Plaintiff's [motion for class certification]."); *Passa*, 266 F.R.D. at 207 (granting class certification); *Carroll v. United Compucred Collections, Inc.*, 399 F.3d 620, 625 (6th Cir. 2005) (affirming order granting class certification).

## V. <u>THE REQUIREMENTS OF FED. R. CIV. P. 23(a) ARE MET</u>

### A. <u>Numerosity</u>

Fed. R. Civ. P. 23(a)(1) requires that certification be supported by a class "so numerous that joinder of all members is impracticable." *Littledove*, 2001 WL 42199, at * 2, citing *East Texas Motor Freight Sys. V. Rodriguez*, 431 U.S. 395, 405 (1977). While "[p]recise enumeration of the members of the class is not necessary," *Gordon v. Corporate Receivables, Inc.*, No. 09-230, 2010 WL 376386, at *1 (D.R.I. Jan. 27, 2010), here, Defendant has confirmed that the proposed class totals 75 consumers who received materially identical debt collection letters. In this Circuit, there is a "low threshold for numerosity." *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009). Generally, "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). *See Michaud v. Monro Muffler Brake, Inc.*, No. 12-353, 2015 WL 1206490, at *2 (D. Me. Mar. 17, 2015) (Torresen, J.) (certifying classes of 103, 97, 44, 23, and 66 members in connection with preliminary approval of class settlements.

Here, Defendant mailed 75 letters to all individual consumers who reside in the United States, each of which contained materially identical language as that which Plaintiff contends violates the FDCPA. As the proposed class has 75 members, it is sufficiently numerous that joinder is impracticable.

**B. Commonality**

The commonality requirement of Rule 23 demands only that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). In FDCPA cases, "[w]here plaintiffs have received similar debt collection letters from the defendants' mailing as the basis of the lawsuit, courts have found common questions of law or fact sufficient to certify the class." *Labbate-D'Alauro v. GC Serv. Ltd. P'ship*, 168 F.R.D. 451, 456 (E.D.N.Y. 1996). "Here, by definition, each putative class member received a dunning letter containing the same Verification Notice. The sole and dispositive legal question is whether that Verification Notice violates the FDCPA." *Bicking v. Law Offices of Rubenstein & Cogan* 2011 WL 5325674 (E.D.Va.2011), at *2; ("Each class member, therefore, has the same claim against Defendant, and the commonality requirement accordingly is met.") *Wess v. Storey*, No. 08-623, 2011 WL 1463609, at *7 (S.D. Ohio Apr. 14, 2011); *Mann v. Acclaim Fin. Serv., Inc.*, 232 F.R.D. 278, 284 (S.D. Ohio 2003) ("The class proposed in this case consists of all consumers who received an initial communication from Acclaim stating, 'In addition, if this debt is not paid within 30 days of the receipt of this letter, this debt will be placed on your personal credit report records for 7 years (5 in New York).' While plaintiff has raised additional claims, there remains at least one issue common to all members of the class, i.e., whether this language violates the FDCPA and/or the OCSPA.").

As the claims asserted by Plaintiff and the class originate from the same conduct, practice, and procedure on the part of Defendant—namely the issuance of initial debt collection letters with standardized language—each member of the class has an identical FDCPA claim based upon the same allegedly violative language in Defendant's initial written communications. See *Passa*, 266 F.R.D. at 203. ("Here, plaintiff's proposed certification of the class and subclass would require that each member have received a communication regarding the Check Resolution Program from the City. Stated differently, the factual and legal questions surrounding such communications are common to the proposed class and subclass and they are the focus of this litigation.");

Here, common questions of both law and fact are raised concerning the propriety of Defendant's form letter. Every prospective class member was sent a substantially identical letter. The Complaint addresses the following legal issues and each applies equally to each and every member of the Class, namely: 1) whether the collection notice mailed by Defendant violates the FDCPA, as alleged in Plaintiff's Complaint; and 2) the proper measure and appropriate formula to be applied in determining class statutory damages under the FDCPA. Therefore, the commonality requirement of Rule 23(a)(2) is satisfied.

**C. <u>Typicality</u>**

The third requirement under Rule 23(a) is that the claims or defenses of the class representatives must be typical of the claims or defenses of the class. *Fed. R. Civ. P. 23(a)(3)*. "It focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Lightbourn v. Cty of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997). "Typicality is satisfied when the representative plaintiff's injuries arise from the same events or course of conduct as do the injuries of the class and when plaintiff's claims and those of the class are based on the same legal theory." *Michaud*, 2015 WL 1206490, at *3.

Here, typicality is satisfied as Defendant sent debt collection letters with materially identical language to numerous consumers during the class period, all of whom have FDCPA claims identical to Plaintiff based solely on the text of the debt collection letters they were sent. See *Mann*, 232 F.R.D. at 284-85 (finding typicality satisfied when plaintiff and class members received debt collection communications containing the same language); *Wess*, 2011 WL 1463609, at *8 ("Here, the representative party's claims are typical in that they have been subjected to the same debt collection practices as the Class Members, and allege the same legal and remedial theories of relief based upon the FDCPA and CSPA for themselves as they assert for absent Class Members.").

Here, every member of the proposed class is alleged to have received a letter in the form of the letter received by Plaintiff. Each member of the Class has the very same claims against the Defendant and each of those claims would be susceptible to the same defenses. Plaintiff respectfully submits that, since the claims of all Class members, including the Plaintiff, arise from the same event, practice or course of conduct, namely, the receipt of a standardized form letter, typicality is satisfied.

### D. <u>Fair and Adequate Class Representation</u>

Next, the Court must determine if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Rule 23(a)(4) requires that the representative plaintiff will fairly and adequately protect the interests of the class." *Gordon*, 2010 WL 376386, at *2. "This encompasses two factors for consideration: (a) the representative plaintiff's interests are not antagonistic to the class she seeks to represent, and (b) that the class will be represented by qualified counsel." *Id.*; *see also Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985) (the "moving party must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation").

Plaintiff has sufficiently demonstrated his desire and ability to vigorously prosecute this action. Since the case's inception, Plaintiff has maintained regular contact with his attorneys and has remained available and accessible to them. Plaintiff recognizes that, as the named plaintiff, he must represent all consumers in the class. His interests are aligned with those of the other Class Members and there has been no indication or suggestion that her interests may conflict with the interests of unnamed Class Members. See Declaration of Michael A. Mastrangelo, ¶ 13. For the foregoing reasons, the Court must conclude that Plaintiff has and will continue to provide fair and adequate class representation in satisfaction of the fourth prong of Fed. R. Civ. P. 23(a).

Appointment of Class Counsel is also one of the obligations of the trial court. The Court may consider any "matter pertinent to counsel's ability to fairly and adequately represent the interests of the class," Fed. R. Civ. P. 23(g)(1)(B). However, Fed. R. Civ. P. 23(g)(1)(A) sets forth four (4) factors which must be considered by the Court in order to satisfy its obligations. Those factors are: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

This Court should find that the counsel chosen by Plaintiff meets the standards imposed by Rule 23. The attorneys at Martin & Bontrager, APC have extensive experience in consumer class actions and other complex litigation. See Bontrager Declaration. Martin & Bontrager, APC practices exclusively in the area of consumer rights litigation, and has extensive experience in fair debt collections, and class actions. *Id.* The attorneys at Martin & Bontrager, APC have litigated thousands of cases and have a history of aggressive, successful prosecution of consumer rights litigation and consumer class actions. From the outset, Martin & Bontrager, APC has vigorously pursued this action on behalf of Plaintiff and the proposed class members and have demonstrated their ability to do so before this court, and, has worked diligently with Defendant's Counsel in reaching a meaningful settlement in the best interest of all the parties. Finally, Defendant does not oppose the appointment of Martin & Bontrager, APC and Bryan W. Clickner, Esq. to represent the proposed class. As such, Plaintiff's Counsel should be appointed as Class Counsel.

## VI. <u>THE REQUIREMENT OF FED. R. CIV. P. 23(b)(1) ARE MET</u>

In addition to meeting the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a), the proposed class must also meet one of the three provisions of Rule 23(b). This Court should find that the class may be certified under Fed.R.Civ.P. 23(b)(1) or Fed.R.Civ.P. 23(b)(3).

According to Fed.R.Civ.P. 23(b)(1), a class action may be maintained if: "(1) prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B). Certification under Fed. R. Civ. P. 23(b)(1)(A) becomes applicable where a party is obliged by law to treat all members of the class alike. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

In this case, if it was adjudicated that Defendant sent to all putative class members, a form collection notice whose language and content violate the FDCPA as a matter of law, Defendant would then be obligated to cease from sending identical notices to other consumers and to change the language of said form notices so as to comply with the FDCPA. A class may also be appropriate under Fed. R. Civ. P. 23(b)(1)(B) because judgments in individual lawsuits could adversely affect the rights of other members of the class. *See In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292 (2d Cir. 1992)("Some members . . . might attempt to maintain costly individual actions in the hope . . . that their claims are more meritorious than the claims of other class members. A mandatory class action under Rule 23(b)(1)(B) is thus necessary ... to prevent claimants with such motivations from unfairly diminishing the eventual recovery of class members."); see also *In re Joint Eastern and Southern District Asbestos Litigatio*n, 982 F.2d 721, 736-37 (2d Cir. 1992), modified, 993 F.2d 7 (2d Cir. 1993) ... (limited fund class appropriate when "recoveries of early successful claimants…would…preclude later claimants . ." from recovering).

In this case, because there are at least 75 class members who can file their own complaint against the Defendant, the funds available for recovery may be insufficient to cover the claims of

each individual. Therefore, a class certified under Fed. R. Civ. P. 23(b)(1)(B) may be appropriate. *Ortiz v. Fireboard Corp.*, 527 US 815, 834 (1999). In order to certify under Fed. R. Civ. P. 23(b)(1)(B), the Court must find that the totals of the aggregated liquidated claims and the fund available for satisfying them, set definitely at their maximums, demonstrate the inadequacy of the fund to pay all the claims. *Id.* at 838. Here, there are at least 75 different class members. If each were to receive $1,000.00 (the maximum statutory award set forth by the FDCPA) that alone would amount to $75,000.00, which is not inclusive of attorney's fees and costs that a prevailing party would also be entitled to under the FDCPA. Defendant's net worth is wholly insufficient and inadequate to satisfy the claims of all 75 class members, which Plaintiff's counsel ascertained by serving written discovery to Defendant regarding Defendant's net worth during the Class Period.

Fed. R. Civ. P. 23(b)(1)(B) is appropriate where the Defendant with inadequate assets may be forced through separate litigation to pay claimants with lower priority to the prejudice of those with higher priority claims. *Id.* at 839. Given that the Defendant does not have the sufficient assets to fully compensate each putative class member, individuals who file suit early on would be awarded damages and attorney's fees in amounts that would, as a practical matter, be to the detriment of claimants who file their lawsuits later. Where the class is comprised of individuals who might state a claim on a single set of facts, thereby invoking a common theory of recovery, and are to be satisfied from a limited fund as the source of payment, certification under Fed. R. Civ. P. 23(b)(1)(B) is appropriate. *Id.* As stated above, each of the putative class members can claim that the Defendant violated the FDCPA based on the language and form of the standardized collection notice that they received and accordingly, each class member stands to be compensated from Defendant's limited assets. Therefore, each member would be entitled to a pro-rata amount. See J. Pomeroy, Equity Jurisprudence § 407, pp. 764-765 (4th ed. 1918) ("[I]f the fund is not sufficient to discharge all claims upon it in full . . . equity will incline to regard all the demands

as standing upon an equal footing, and will decree a pro rata distribution or payment"). Based on the foregoing reasons, the Court will find that the requirements of Fed. R. Civ. P. 2"(b)(1)(B) have been met.

## VII. THE REQUIREMENTS OF FED. R. CIV. P. 23(b)(3) ARE MET

For certification under Fed. R. Civ. P. 23(b)(3), a two-pronged test must be met. First, "questions of law or fact common to class members [must be found to predominate over questions affecting only individual members." Fed. R. Civ. P.23(b)(3). Additionally, the Court must find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* In reaching its conclusions, the Rule requires a Court to consider the interests of individual members of the class in controlling their own individual litigation, the nature and extent of any existing parallel litigation, the desirability of concentrating the litigation in one forum and the manageability of the class action. Fed. R. Civ. P. 23(b) (3); see *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615-16 (1997). The Court will find that the Rule 23(b)(3) criteria have been met.

### A. Common Questions Predominate

The predominance criterion is satisfied where a "common nucleus of operative fact" exists among all members of the class for which a remedy is provided at law. *Newman v. CheckRite California, Inc.*, *supra* at *8 (internal quotation omitted). In consumer actions brought under the FDCPA, a common nucleus of operative fact is "typically" found where, as here, "defendants have engaged in standardized conduct toward members of the proposed class by mailing to them allegedly illegal form letters or documents." *Ballard*, 186 F.R.D. 589, 595 (E.D.CA. 1999) quoting *Keele v. Wexler*, 149 F. 3d 589, 594 (7th Cir. 1998). Here, the central legal issue before this Court is whether Defendant's debt collection letters violated the FDCPA.

Numerous courts have found that common questions of law and fact predominate where class members' claims are based on standardized debt collection letters, as is the case here. As a

result, Plaintiff and the putative class readily satisfy the predominance requirement. See, e.g., *Bicking*, *supra,* at 844-46 (E.D. Va. 2011) ("In this matter, all of the proposed class members' claims arise from Defendants' act of mailing the dunning letter at issue. And as already established, their legal theories are identical: Each class member's potential claim turns on the single question of whether Defendants' Verification Notice violated the FDCPA. That shared issue clearly predominates over potential peripheral matters, making collective resolution sensible in this case."); *Lewis v. ARS Nat'l Servs., Inc.*, No. 2:09-cv-1041, 2011 WL 3903092 (N.D. Ala. Sept. 6, 2011) ("Here, not only will class-wide issues of proof predominate, but it is unlikely that there will be any issues of individualized proof. To determine whether the collection letters sent by American Recovery Systems violated the FDCPA, the court will not need to question whether each class member was deceived or misled by the privacy notice, because the least sophisticated consumer standard governs. Additionally, the Court need not determine whether the named plaintiff or other putative plaintiffs read or were confused by the notice, as the standard is whether the least sophisticated consumer would have been misled").

Here, Defendant's "standardized conduct" upon which the alleged FDCPA violations are premised clearly predominates over any questions affecting only individual members. At issue is Defendant's standardized form letter which was mailed to consumers nationwide. As such, individual issues concerning identification of prospective class members and entitlement to actual damages are capable of determination and considered "ancillary to the Court's evaluation of the predominantly common issues." *Wyatt v. Creditcare, Inc.*, 2005 WL 2780684, *5 (N.D. Cal., October 25, 2005). Therefore, the "predominance" requirement is met.

**B. <u>A Class Action is Superior to Other Methods of Adjudication</u>**

In the context of an FDCPA action, courts have routinely found a class action superior to individual claims. First, individual consumers are most likely unaware of their rights under the FDCPA, therefore class action certifications to enforce compliance with consumer protection

statutes should be encouraged. Second, the size of individual claims is usually so small there is little incentive to sue individually. According to 15 U.S.C. §1692k: "(a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this title with respect to any person is liable to such person in an amount equal to the sum of …(B) in the case of a class action…(ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector…" 15 U.S.C. §1692k.

To determine if the superiority requirement of Rule 23(b)(3) is satisfied, the Court must consider (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3). Because the claims in this case arise from a form initial debt collection letter used by Defendant, a class action is the superior vehicle for determining the rights of absent class members. See *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2012) ("[C]ases alleging a single course of wrongful conduct are particularly well-suited to class certification.")

In certifying FDCPA claims, the court in *McDonald v. Asset Acceptance, LLC* explained:

> Here, individual class members are likely to be unaware of any violation. There is evidence that the class potentially consists of [many] members. In addition, estimated statutory damages for violations of the FDCPA are likely to be fairly small. Therefore, Plaintiffs demonstrated that a class action is the superior method of adjudication in this case.

296 F.R.D. 513, 522 (E.D. Mich. 2013); see also *Carroll*, 399 F.3d 620, 625 (rejecting argument that class treatment of FDCPA claims was not the superior means of adjudicating those claims because the approximate amount that could be recovered by each of the estimated 164 members of the putative class would be $60); *Abels v. JBC Legal Grp., P.C.*, 227 F.R.D. 541, 547 (N.D.

Cal. 2005) ("Case law affirms that class actions are a more efficient and consistent means of trying the legality of collection letters."). The same is true here.

No one member of the class has an interest in controlling the prosecution of the action because the claims of all members of the class are identical, as the allegations involve standardized conduct. Class members who litigated their claims individually would have less litigation or settlement leverage and significantly reduced resources should they be required to individually litigate their claims. *Magallon v. Robert Half International, Inc.*, 311 F.R.D. 625, 641 (D. Or. 2015). Alternatives to a class action are either no recourse for numerous class members, or a multiplicity of suits resulting in the inefficient administration of the litigation. See *Luther*, at *6 ("Here, where each individual class member's recovery would be small and the class size is large, combining identical claims into a single action is the superior and most efficient way to resolve the claims."). Absent a class action, many claims identical to those asserted by Plaintiff will go unaddressed. For these reasons, a class action is the superior method to adjudicate this controversy.

The Court need not award the maximum but may award some lesser amount in its discretion after considering the factors listed in the FDCPA § 1692k. If none of the 75 class members opt-out of the settlement, each Qualified Class Member will receive twenty five dollars ($25.00). If consumers opt-out of the settlement, then the amounts paid to each Qualified Class Member shall be increased on a *pro rata* basis. Significantly, given the capped damages available to FDCPA class actions, this class action settlement falls well within the range of class action settlements in similar FDCPA matters around the country.[2]

[2] See, e.g., *Gonzalez v. Dynamic Recovery Solutions, LLC*, Nos. 14–CIV–24502, 14–CIV–20933, 2015 WL 738329, at *3 (S.D. Fla. Feb. 23, 2015) (approving FDCPA settlement consisting of a nationwide injunction and $15,000 cy pres payment, with no payments to class members); *Little–King v. Hayt Hayt & Landau*, No. 11-5621, 2013 WL 4874349, at *3, *14 (D.N.J. Sept. 10, 2013) ($40,000 fund for class of 49,156 resulted in recovery of $7.87 per claimant); *Catala v. Resurgent Capital Servs*. L.P., No. 08cv2401 NLS, 2010 WL 2524158, at *3 (S.D. Cal. Jun. 22, 2010) (approving FDCPA settlement of $35,000 distributed cy pres, with no payment to class members); *Reade–Alvarez v. Eltman, Eltman & Cooper, P.C.*, 2006 WL 3681138, at *7 (E.D.N.Y. Dec.11, 2006) (approving FDCPA settlement of $45,000 cy pres payment, with no payment to class members); *Bourlas v. Davis Law Assocs.*, 237

Finally, concerns of judicial efficiency and consistency favor litigating the propriety of the Defendant's conduct by all class members in one action rather than several individual suits. Considering the Congressional intent behind the FDCPA and its mandate to allow for class action litigation, a class action under the circumstances presented here would be superior to any other method of adjudication.

## VIII. THE SETTLEMENT SHOULD BE GIVEN PRELIMINARY APPROVAL AS IT IS FAIR, REASONABLE, ADEQUATE AND THE PRODUCT OF DILIGENT INVESTIGATION, LITIGATION AND NEGOTIATION

Under 15 U.S.C. §1692k, a class of consumers may recover a maximum award "not to exceed the lesser of $500,000 or 1 percent of the net worth of the debt collector…" 15 U.S.C. §1692k. The $1,875.00 Class Payment represents over 100% of the maximum class-wide statutory damages for recovery under the FDCPA, which is capped by statute at one percent of

F.R.D. 345, 355 (E.D.N.Y. 2006) (approved settlement fund of $21,759 would net class members approximately $7.32); *Cope v. Duggans*, 203 F. Supp. 2d 650, 653 (E.D. La. 2002) (approving FDCPA settlement where class members who returned claim forms would receive $11.90 each); *Jerman v. Carlisle*, 271 F.R.D. 572, 576–77 (N.D. Ohio 2010) (certifying class in which FDCPA damages cap would limit relief to $3.10 per class); *Berther v. TSYS Total Debt Mgmt., Inc*., 2007 WL 1795472 (E.D. Wis. June 19, 2007); *Gaalswijk-Knetzke v Receivables Mgmt. Servs. Corp.*, 2008 WL 3850657 (M.D. Fla. Aug. 14, 2008) (rejecting argument that the class should not be certified because class members would receive only $3.20 each); *Turnette v. Fulton, Friedman & Gullace, LLP*, 11-cv-2617 JAH (BLM) (S.D. Cal. December 22, 2016), ECF No. 124 (Injunctive relief only to the class); *Del Campo v. Am. Corrective Counseling Servs.*, 254 F.R.D. 585 (N.D. Cal. 2008) ($.0000011 cents to each class member); *Seeger v. Plaza Associates*, 2007 U.S. Dist. LEXIS 22824 (E.D. Wis. March 29, 2007) ($21 to each class member); *Salazar v. Midwest Servicing Group, Inc.* 2:17-cv-00137-PSG-KS (C.D. Cal. Oct. 2, 2018) ($20 to each class member); *Jacobson v. Persolve, LLC*, 2016 U.S. Dist. LEXIS 108838 (N.D. Cal. March 23, 2016) ($10.66 to each class member); *Kalish v. Karp & Kalamotousakis, LLP*, 246 F.R.D. 461 (S.D.N.Y. 2007) ($2.50 to each class member); *Labbate-D'Alauro v. GC Servs. Ltd. Pshp.*, 168 F.R.D. 451 (E.D.N.Y. 1996) ($30 to each class member); *Bogner v. Masari Investments, LLC*, 2010 U.S. Dist. LEXIS 81143 (D. Ariz. 2010) ($11.28 to each class member); *Schuchardt v. Law Office of Rory W. Clark*, 2016 WL 1701349 (N.D. Cal. Apr. 28, 2016) ($15 to each class member); *Abels v. JBC Legal Grp. P.C.*, 227 F.R.D. 541 (N.D. Cal. 2005) ($.25 cents to each class member); *Henderson v. Eaton*, 2002 WL 3145728 (E.D. La. 2002) ($21 to each class member); *Lombardi v. Columbia Recovery Group, LLC*, 2013 U.S. Dist. LEXIS 146375 (W.D. Wash. Oct. 9, 2013) ($1 to each class member); *Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997) ($.28 cents to each class member); *Alderman v. GC Servs. Ltd. P'ship*, Case No. 2:16-cv-14508, Dkt. Nos. 181, 190 (S.D. Fla. 2018). ($10 per class member); *Schell v. Frederick J. Hanna & Assocs*., P.C., No. 3:15-cv-418, 2016 WL 1273297, at *3 (S.D. Ohio Mar. 31, 2016) ($10 per class member); *Whitford v. Weber & Olcese, P.L.C.*, No. 1:15-cv-400, 2016 WL 122393, at *2 (W.D. Mich. Jan. 11, 2016) (same); *Bellum v. Law Offices of Frederic I. Weinberg & Assocs.*, P.C., No. 15-2460, 2016 WL 4766079, at *3 (E.D. Pa. Sept. 13, 2016) ($10.92 per class member).

Defendant's net worth. See 15 U.S.C. § 1692k(A)(2)(B) ("in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector").

Given counsels' thorough analysis of the legal and factual issues raised by this case, this litigation has reached the stage where "the Parties certainly have a clear view of the strengths and weaknesses of their cases" sufficient to support the Settlement. *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 617 (N.D. Cal. 1979). Based on their experience with these types of cases and analysis of the issues raised herein, counsel share the view that this is a fair and reasonable settlement and in the best interests of the Class. Because of the detailed legal and actual analysis conducted by counsel, their endorsement of the Settlement "is entitled to significant weight" in deciding whether to approve the Settlement. *Fisher Bros. v. Cambridge Lee Industries, Inc.*, 630 F.Supp. 482, 488 (E.D. Pa. 1985); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal.1980). Courts should not substitute their judgment for that of the proponents, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the litigation. *National Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).

Both Plaintiff and his counsel firmly believe that the settlement here is fair, reasonable, and adequate, and in the best interests of class members. A strong initial presumption of fairness should attach to the proposed settlement because it was reached by well-qualified counsel engaged in arm's-length negotiations. Courts accord great weight to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation. See *Thacker v. Cheaspeake Appalachia LLC*, 695 F. Supp. 2d at 532 ("In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the

relative risks and benefits of protracted litigation are entitled to great deference.”); *In re Skechers Toning Shoe Prod. Liab. Litig.*, No. 3:11-MD-2308-TBR, 2013 WL 2010702, at *6 (W.D. Ky. May 13, 2013) (same). Here, Plaintiff's counsel is extremely experienced in class action litigation, particularly cases under the FDCPA. See Bontrager Declaration at ¶¶ 8-15. Accordingly, his support for this settlement and the absence of any opposition from Defendant or its counsel strongly supports preliminary approval.

Accordingly, Plaintiff respectfully requests that this Court preliminarily approve the Class Settlement.

## IX. PLAINTIFF REQUESTS AN ORDER APPROVING THE PROPOSED CLASS SETTLEMENT

The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re Gen. Motors*, 55 F.3d 768, 784 (3d Cir.1995). Likewise, the public interest favors preliminary approval. In applying all of these aforementioned factors, this Court should be guided foremost by the general principle that settlements of class actions are favored by the courts. See, e.g., *UAW v. General Motors Corp*, 497 F.3d at 632 (6th Cir. 2007) (noting the “federal policy favoring settlement of class actions”); *Date v. Sony Elecs., Inc.*, No. 07-15474, 2013 WL 3945981, at *5 (E.D. Mich. July 31, 2013) (“Settlement of class action litigation is strongly favored in the law and as a matter of federal policy.”); NEWBERG, § 11.41 (“The compromise of complex litigation is encouraged by the courts and favored by public policy.”).

Because the requirements of Fed. R. Civ. P. 23 have been met, the parties stipulate that the defined class be conditionally certified for settlement purposes and jointly request that the Court grant Preliminary Approval. The parties respectfully request that the Court approve and adopt the attached proposed “Class Action Settlement Agreement.”

By settling this matter, both parties avoid the expense of class certification, trial and uncertainty of outcome. If this matter proceeded to trial the net value of the recovery would be further decreased due to the costs of compelling further discovery, preparing for trial and possibly, engaging in post-trial matters, including the lodging of an appeal. The Court, after reviewing the terms negotiated upon by the parties, will find that the settlement reached will be fair, adequate and reasonable for all involved. Therefore, the circumstances of this matter, as discussed above, heavily weigh in favor of the proposed settlement.

## X. THE PROPOSED NOTICE PROGRAM PROVIDES ADEQUATE NOTICE AND SHOULD BE APPROVED

Once preliminary approval of a class action settlement is granted, notice must be directed to class members. For class actions certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition, Rule 23(e)(1) applies to any class settlement and requires the Court to "direct notice in a reasonable manner to all class members who would be bound by a proposal." Fed R. Civ. P. 23(e)(1). When a court is presented with a classwide settlement prior to the certification stage, the class certification notice and notice of settlement may be combined in the same notice. Manual, § 21.633 at 321-22 ("For economy, the notice under Rule 23(c)(2) and the Rule 23(e) notice are sometimes combined."). This notice allows the settlement class members to decide whether to opt out, participate in the class, or object to the settlement. *Id.*

The requirements for the content of class notices for (b)(3) classes are specified in Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii). In addition to meeting the specific legal requirements of Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii), the Notices here accurately inform Settlement Class Members of the salient terms of the Settlement Agreement, the Settlement Class definition, the final approval hearing and the rights of all parties, including the rights to file objections and to opt out of the settlement.

## XI. <u>THE COURT SHOULD APPOINT EPPERLY RESOLUTIONS AS SETTLEMENT ADMINISTRATOR</u>

Plaintiff requests that the Court appoint Epperly Resolutions as the third-party Settlement Administrator in this matter. Epperly is a well-qualified and experienced claims administrator that has overseen claims administration in numerous class actions settlements.

## XII. <u>CONCLUSION</u>

Plaintiff submits that this action meets all prerequisites for certification as a class action. As discussed above, there are common issues of law and fact that predominate over individual issues and given the size of the class and the Defendant's net worth, a class action is a superior method of adjudication. A class action will avoid inconsistent judgments and prejudice to the class members. The parties have also reached a settlement in principal which is fair, adequate and reasonable.

Dated: August 26, 2022

RESPECTFULLY SUBMITTED,

**MARTIN & BONTRAGER, APC**

By: <u>/s/ Nicholas J. Bontrager</u>
Admitted *Pro Hac Vice*
4605 Lankershim Blvd., Ste. 535
Toluca Lake, CA 91602
Phone: (323) 940-1700
Fax: (323) 238-8095
Nick@mblawapc.com
Attorney for Plaintiff